1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES W. HECKMAN,

Plaintiff ,

v.

STATE OF WASHINGTON AND UNITED
STATES DEPARTMENT OF
AGRICULTURE,

Defendants.

Case No. C04-5447RJB

ORDER GRANTING
MOTIONS FOR
SUMMARY JUDGMENT
AND DISMISSING CASE

        This matter comes before the court on the United States' Motion to Dismiss (Dkt. 27), and on the

State of Washington's Motion to Dismiss and for Summary Judgment (Dkt. 28). The court has considered

the pleadings filed in support of and in opposition to the motions and the file herein.

PROCEDURAL HISTORY

        On July 30, 2004, plaintiff filed this civil action against the United States Department of Agriculture

(USDOA) and the State of Washington . Dkt. 1.

        Liberally construed, the complaint appears to assert causes of action under 42 U.S.C. § 1983, 18

U.S.C. § 1961 (RICO), 5 U.S.C. § 552(i), and 5 U.S.C. § 2301(b)(9).  The complaint alleges *Bivens*

actions against the USDOA for claimed violations of the First, Fifth, Seventh, Ninth and Fourteenth

Amendments. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S.

388 (1971).  The complaint also alleges causes of action, apparently against the State of Washington,

under RCW 41.06.260, 42.40.030, 42.40.035, 49. 44.010, 73.16.10 [sic], 73.16.15, and 73.16.20.

On May 27, 2005, the USDOA filed a motion to dismiss. Dkt. 27. On May 27, 2005, the State of Washington filed a Motion to Dismiss and for Summary Judgment. Dkt. 28. On June 8, 2005, plaintiff filed responses to both motions. Dkt. 29 and 30. On June 16, 2005, the court issued an order converting the USDOA's motion to dismiss to a motion for summary judgment. Dkt. 33.

Plaintiff's claims and arguments have changed as the proceedings have developed. It is difficult to determine which claims plaintiff intends to pursue, and on what theories, and which he has abandoned. He has continued to revisit the merits of issues that were litigated before the Merit Systems Protection Board (MSPB), the Federal Circuit, the U.S. District Court, and the Washington state trial and appellate courts, but he also claims that those issues are not at issue in this case. Because of plaintiff's *pro se* status, the court has liberally reviewed the claims and the documents he has filed, and afforded him the benefit of the doubt. Accordingly, the court has addressed all of the claims plaintiff has appeared to raise from the filing of the case to the present.

Plaintiff stated in his response to the motions that the court should not rule on these motions until discovery is completed. In order to continue a summary judgment motion, a party so requesting must show that he or she diligently pursued previous discovery opportunities, and must also show how allowing additional discovery would preclude summary judgment. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir.1994). *See* Fed.R.Civ.P. 56(f). Plaintiff has not shown how additional discovery would preclude summary judgment. Moreover, the record before the court is sufficient for the court to rule on these motions.

## LEGAL STANDARD

**Jurisdiction.** A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but

may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing, may rely on affidavits or any other evidence properly before the court. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947).

**Failure to State a Claim.** A court may dismiss a claim if it appears beyond doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983), *citing Conley v. Gibson*, 355 U.S. 41, 45-56 (1957). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). However, a plaintiff must plead factual allegations with specificity; vague and conclusory allegations of fact fail to state a claim for relief. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3rd Cir. 1988). If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d at 1300. If the claim is not based on a proper legal theory, the claim should be dismissed. *Id.* A court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one of summary judgment. *Gemtel Cor. v. Community Redevelopment Agency*, 23 F.3d 1542, 1544, n. 1 (9th Cir. 1994).

**Summary Judgment.** Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

<u>DISCUSSION</u>

**1. United States Department of Agriculture's Motion for Summary Judgment**

In *Heckman v. Department of Agriculture*, 2003 WL 21920167, the Federal Circuit summarized the facts surrounding plaintiff's federal employment as follows:

> Mr. Heckman is a very accomplished scientist and a veteran of the Vietnam War. In 1997, Mr. Heckman applied for a botanist position with the agency's Institute of Northern Forestry Cooperative Research Unit in Alaska and was accorded veteran's preference status. While the position was still open, agency officials offered Mr. Heckman a research grant as consideration for withdrawing from competition for the botanist position. Mr. Heckman reported this conduct to the Office of Special Counsel (OSC). Eventually, the agency and Mr. Heckman entered into a settlement agreement, wherein Mr. Heckman agreed to drop his claim, and the agency offered Mr. Heckman a Research Fishery Biologist position in Olympia, Washington, which he accepted.

1    *Id.* at *1.  Plaintiff was later terminated from the Fishery Biologist position with the U.S. Forest Service of

2    the USDOA after his "final probationary evaluation indicated he was marginal in productivity, leadership,

3    and initiative, and unsatisfactory in work quality."  *Id.* at *2.

4            Plaintiff filed an action with the MSPB, challenging his termination by the USDOA.  In that action

5    plaintiff contended that his discharge violated the Uniformed Services Employment and Reemployment

6    Rights Act (USERRA), Veterans Employment Opportunities Act (VEOA), and the Whistleblower

7    Protection Act (WPA).  *Id.*  The MSPB ruled against plaintiff, and he appealed the decision to the Federal

8    Circuit.  *Id.*

9            In affirming the decision of the MSPB, the Federal Circuit concluded as follows:

10           In sum, the agency terminated Mr. Heckman because he failed to perform at an acceptable level
             during his probationary period.  His work did not meet the quality standards the agency sought.  This
11           court finds that the Board's decision does not violate any law or procedural rules, is not arbitrary,
             capricious, or an abuse [sic] its discretion, and is supported by substantial evidence.
12

13   *Id.* at *3.

14           On April 18, 2000, plaintiff filed a civil action: *Heckman v. Department of Agriculture*, Western

15   District of Washington, C00-5232FDB.  In that case, plaintiff brought an action under the Privacy Act, 5

16   U.S.C. § 552a, seeking amendment of personnel records, which he asserted contained a series of falsehoods

17   and misrepresentations of fact used to justify his dismissal for unsatisfactory performance.   Following the

18   decision of the Federal Circuit in *Heckman v. Department of Agriculture*, 2003 WL 21920167, U.S. District

19   Judge Franklin D. Burgess dismissed the federal action (C00-5232FDB) with prejudice.  Judge Burgess also

20   denied plaintiff's motion to reopen the case, in which plaintiff had asserted that he had reason to believe

21   that employees of the Forest Service were contacted and provided information that prevented plaintiff from

22   being hired.  *See* Dkt. 27, Exh. 2, at 2.

23           Plaintiff also alleges that, after the MSPB proceedings had concluded, and after he had filed the

24   original complaint in *Heckman v. Department of Agriculture*, Western District of Washington, C00-

25   5232FDB, he applied for a position with the Washington Department of Ecology; and that one of the search

26   committee members, Dale Norton, rejected him for the position after receiving derogatory information

27   about him from USDOA employee Deanna Stouder.  Ms. Stouder was program manager for the U.S. Forest

28   Service Station in Tumwater, Washington, where plaintiff had worked and subsequently been terminated;

ORDER
Page - 5

this termination had been upheld by the Federal Circuit in *Heckman v. Department of Agriculture*, 2003 WL 21920167. Dkt. 31, Exh. D, Declaration of Dale Norton, at 3. In his declaration, Mr. Norton stated as follows:

> On November 16, 2000, I conducted a reference check for Mr. Heckman. I was contacted by a program manager at the USFS Forest Service Station in Tumwater, in response to a phone message that I had left earlier in the week concerning a reference check for Mr. Heckman. It was my understanding that Mr. Heckman had been employed there between May 1998, and May, 1999. A true and correct copy of my reference check notes is attached hereto as *Exhibit 4*. In response to my questions, the USFS program manager advised that Mr. Heckman had experienced problems following supervisory directions and "problems working with others and taking guidance from management." She also advised that Mr. Heckman "works best independently."

*Id.*

Plaintiff filed this action on July 30, 2004, alleging that the USDOA violated his rights as follows:

> The Department of Agriculture not only deprived Plaintiff of his civil rights, incurring civil liability pursuant to 42 U.S.C. § 1983 and Amendments I, V, VII, IX, and XIV of the Constitution of the United States, it permitted and encouraged its employees to commit misdemeanors and felonies in order to create a fraudulent record of Plaintiff's employment and use this record to slander Plaintiff in the eyes of other employers. The felonies committed by agents of the Forest Service between 1997 and 2003 included but may not have been limited to attempted grand larceny in the attempt to misappropriate $20,000 earmarked for equipment purchases in order to pay Plaintiff a bribe to withdraw from the selection, payment of a large bribe disguised as a research grant from the University of Alaska, fraud in the distribution of research funds to university employees, threats to dismiss and then dismissal of Plaintiff for refusal to cover up the fraud, and perjury in testimony before the Merit System Protection Board, a notoriously biased agency, which has never in its history ruled in favor of a veteran claiming his legal right to preference in public employment and places tracts opposing veterans' preference on its website. The apparent safety from prosecution felt by the agents of the Defendants when committing these felonies reflects the widespread willingness of many prosecutors and judges in Washington to cooperate with agencies seeking to violate the civil rights of veterans in a manner that differs in no way from other forms of organized crime. See 18 U.S.C. § 1961. The specific violation of the Privacy Act that prevent [sic] Plaintiff from finding employment with the State of Washington is classified as a misdemeanor. See 5 U.S.C. § 552a(i).

> After Plaintiff learned that the Forest Service was attempting to create a false record of poor performance, he filed an agency grievance. This increased the intensity of the reprisal and resulted in the production of a considerable body of false records, which include many contradictory allegations. This grievance was never investigated and eventually dismissed on the grounds that Plaintiff was not permitted to file a grievance prior to the end of his probationary year. The Forest Service has continued to use the fanciful allegations by illegally releasing them to prospective employers to keep Plaintiff from ever finding employment, as demonstrated in one case by affidavit. Reprisal for filing an agency grievance is a prohibited personnel practice. See 5 U.S.C. § 2302(b)(9).

Dkt. 1, at 4-5.

Plaintiff also appears to contend that the USDOA and the State of Washington conspired to prevent him from finding employment anywhere. Dkt. 1, at 2-3.

In its motion to dismiss (now motion for summary judgment), the USDOA contends that (1)

plaintiff's claim under 42 U.S.C. § 1983 fails to state a claim upon which relief can be granted; (2) the court lacks subject matter jurisdiction over plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act (RICO); (3) plaintiff's claims under the Privacy Act and the Civil Service Reform Act (CSRA) are barred by *res judicata*; and (4) plaintiff's constitutional claims under the First, Fifth, Seventh, Ninth and Fourteenth Amendments fail to state a claim upon which relief can be granted.  Dkt. 27.

In his first response to the motion of the USDOA, plaintiff contends that (1) res judicata and collateral estoppel do not apply because the incident in which a Department of Forestry staffmember discussed his performance with Dale Norton, an employee of the State of Washington Department of Ecology, did not occur until after the proceedings before the MSPB had concluded; (2) res judicata and collateral estoppel should not apply to other issues plaintiff has raised in this case because it would be in the interest of the court "to fully elucidate this situation;" (3) res judicata and collateral estoppel may not be applied to his claims under the Privacy Act because the MSPB had no jurisdiction over his Privacy Act claims; (4)  the Washington State court decisions do not apply to the USDOA, which was not a party to those actions; (5) collateral estoppel may not be applied to the claims he raises in this case because "[t]he issue in the present lawsuit has nothing to do with Federal civil service employment, with reinstatement, or with any other matter that is within the province of the MSPB to adjudicate; (6) the release of personnel records to third parties without permission of the person concerned is a misdemeanor, and therefore the decision in *Heckman v. Department of Agriculture*, Western District of Washington, C00-5232FDB, does not apply to plaintiff's claim that the USDOA improperly released records under the Privacy Act.  Dkt. 30.

On July 17, 2005, after the motion to dismiss was converted to a motion for summary judgment, plaintiff filed an additional response opposing the motion for summary judgment. Dkt. 37 and 39.  Plaintiff contends that the court should not consider the summary judgment motion before discovery is completed; and that the claims he has brought in this action are "not concerned with any issues brought before the MSPB or previously decided by this court." (Dkt. 37, at 7).  Plaintiff contends that Deanna Stouder "maliciously released false and distorted information over the telephone from Plaintiff's personnel records during an ongoing appeal before the MSPB, and as a result of receiving such information, the head of the selection committee for the Washington State Department of Ecology cast the deciding vote not to hire Plaintiff for a vacancy with his agency, for which Plaintiff had received an examination score of 100% and

should have benefited [sic] from a legal right to preference as a veteran." Dkt. 37, at 8.  Plaintiff contends

that the disclosure by Ms. Stouder violated the Privacy Act, 5 U.S.C. § 552a.  Plaintiff alleges that, because

he was engaged in an appeal of a USDOA decision in an unrelated matter, and because Ms. Stouder was the

main agent of the USDOA opposed to plaintiff in that appeal, there are issues of fact regarding whether the

release of the information was willful and malicious and intended to prevent plaintiff from obtaining

employment.  Dkt. 37, at 10.  Plaintiff also contends that the release of this information violated

Washington's anti-blacklisting statute, RCW 49.44.010.  Plaintiff further contends that, although several

issues raised by the USDOA are not relevant to the complaint, the USDA was incorrect in several respects.

See Dkt. 37, at 12-17.

**Claim under 42 U.S.C. § 1983 and Bivens Action.**  Plaintiff contends that the USDOA violated his

civil rights under 42 U.S.C. § 1983.  In order to state a claim under 42 U.S.C. § 1983, a complaint must

allege that (1) the conduct complained of was committed by a person acting under color of state law, and

that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v.

Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if

both of these elements are present.  *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*,

478 U.S. 1020 (1986).  Plaintiff has not stated a claim under 42 U.S.C. § 1983 against the USDOA because

he has alleged no *state* action on the part of the USDOA, a federal agency.

Plaintiff's complaint could be construed to allege causes of action for violations of his First, Fifth,

Seventh, Ninth, and Fourteenth Amendments, pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*,

403 U.S. 388 (1971). However, a plaintiff may not bring a *Bivens* action against the federal government or

its agencies.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).   Because plaintiff has named the USDOA as

the sole federal defendant in this case, he has not stated a cause of action under *Bivens*.

Even an attempt to amend the complaint to allege causes of action against individual federal

employees, however, would be futile.  A federal employee does not have a First Amendment *Bivens* action

against his or her employer.  *Bush v. Lucas*, 462 U.S. 367, 390 (1983).  Further, neither the Supreme

Court, nor the Ninth Circuit, have ever recognized *Bivens* actions under the Seventh or Ninth

Amendments.  *See Correctional Services Corporation v. Malesko*, 534 U.S. 61, 67-70 (2001)(noting that

the Court has only recognized *Bivens* actions for Fourth, Fifth, and Eighth Amendment violations); *see also Erickson v. United States*, 976 F.2d 1299, 1301 n.1 (9th Cir. 1992)(recognizing *Bivens* actions for Fourth, Fifth, and First Amendment violations).  There can be no *Bivens* actions pursuant to the Fourteenth Amendment because the Fourteenth Amendment requires state action.  *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982); *see also Erickson v. United States*, 976 F.2d at 1301 n. 2 (noting that Fourteenth Amendment Bivens actions are precluded by the state action requirement).  A Fifth Amendment Bivens action is precluded by the CSRA.  *See Bush v. Lucas*, 462 U.S. at 390 (holding that Congress' enactment of the CSRA precluded an employee's Bivens action against his supervisor); see also *Blankenship v. McDonald*, 176 F.3d, 1192, 1195 (9th Cir. 1999)(holding that CSRA precluded an employee's *Bivens* action, even if the employee does not have an effective remedy).

Plaintiff's constitutional claims under 42 U.S.C. § 1983 and his Bivens claims against the USDOA do not state a claim.  Any amendment of the complaint to allege Bivens claims against individual employees of the USDOA would be futile.  The USDOA's motion to dismiss plaintiff's federal constitutional claims should be granted, and these claims should be dismissed.

**RICO.**  Plaintiff contends the USDOA and the State of Washington violated RICO when they conspired to falsify his employment records and illegally disclosed false information in order to deny him employment.  This claim is apparently based, at least in part, on plaintiff's allegation that the USDOA disclosed information about him to the State of Washington, which denied him employment.  *See Heckman v. State of Washington Department of Ecology*, 2003 WL 22701479, *2 (Wn.App. Div. 2) ("As a follow-up to the November 6 interview, on November 16, 2000, Dale Norton, one of the interviewers [for a Washington State Department of Ecology position], conducted a reference check with the United States Forest Service (USFS), Dr. Heckman's previous employer.  Norton spoke to the program manager at the USFS Tumwater Station.  During the check, Norton learned that Dr. Heckman worked best independently and had 'problems...taking guidance from management.' ").

The USDOA contends that this court has no jurisdiction over plaintiff's RICO claim against the USDOA because the United States is protected from the RICO claims by sovereign immunity.

The United States is immune from suit absent a waiver of sovereign immunity.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir.

1  1998).  Any waiver of sovereign immunity must be express and unambiguous.  *United States v. Mitchell*,

2  445 U.S. 535, 538 (1980); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983).  Any waiver must be

3  strictly construed in favor of the United States; no waiver exists where the language of a statute is

4  ambiguous. *See Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986); *United States v. N.Y. Rayon*

5  *Importing Co.*, 329 U.S. 654, 659 (1947); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34

6  (1992); *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 864 (9th Cir. 1996).  Unless a statute

7  expressly and unambiguously waives sovereign immunity, federal courts have no jurisdiction to hear a

8  claim against the United States.  *FDIC v. Meyer*, 510 U.S. at 475.  The burden is on the person seeking to

9  bring a claim against the United States to demonstrate that the claim falls within an applicable waiver of

10  sovereign immunity.  *Holloman v. Watt*, 708 F.2d at 1401.

11      RICO authorizes private suits for violations of 18 U.S.C. § 1962.  18 U.S.C. § 1962 prohibits "any

12  person" from engaging in several enumerated categories of criminal conduct.  RICO's language does not

13  unequivocally state that the United States or its agencies are subject to suit, and therefore, sovereign

14  immunity bars a RICO claim against the United States.  *McMillan v. Department of Interior*, 907 F.Supp.

15  322, 326 (D.Nev.,1995), *aff'd* 87 F.3d 1320 (9th Cir. 1996), *cert denied* 519 U.S. 1132 (1997)(RICO

16  statutes do not waive the sovereign immunity of the United States or its agencies); *Andrade v. Chojnacki*,

17  934 F.Supp. 817, 831 (S.D.Tex.1996)(Absent an express waiver of sovereign immunity, a RICO action

18  cannot be maintained against the United States).  Further, the United States is not a "person" under RICO,

19  and therefore, it cannot violate RICO and cannot be sued under RICO.  *United States v. Bonanno Org.*

20  *Crime Family of LaCosa Nostra*, 879 F.2d 20, 23 (2d Cir. 1989); *Peia v. United States*, 152 F.Supp.2d

21  226, 234 (D.Conn.2001).  Finally, the USDOA is not subject to suit under RICO because it is not subject

22  to criminal prosecution.  *See Berger v. Pierce*, 933 F.2d 313, 397 (6th Cir. 1991)(plaintiff may not maintain

23  a civil action under RICO unless he or she can demonstrate that a defendant is engaged in "racketeering

24  activity," which requires conduct that is subject to criminal prosecution; since a federal agency is not

25  subject to state or federal criminal prosecution, it cannot therefore be sued under RICO).

26      Plaintiff has not stated a RICO claim against the United States.  The court should grant the United

27  States' motion and dismiss the RICO claims against the United States.

28      **Retaliation and Creation of Fraudulent Record.**  It appears from the complaint that plaintiff

1  alleges that the USDOA retaliated against him, and permitted and encouraged its employees to commit

2  misdemeanors and felonies in order to create a fraudulent record of his employment and to use this record

3  to slander plaintiff in the eyes of other employers.  These claims are apparently based upon the CSRA and

4  the Privacy Act.  The USDOA contends that these claims are barred by *res judicata*.

5      The doctrine of *res judicata*, or claim preclusion, bars any future claims that were raised, or could

6  have been raised, in a prior action.  *Owens v. Kaiser Foundation Health Plan, Inc*., 244 F.3d 708, 713 (9th

7  Cir. 2001).  In order to bar a later suit under the doctrine of *res judicata*, an adjudication must (1) involve

8  the same claim as the later suit, (2) have reached a final judgment on the merits, and (3) involve the same

9  parties or their privies.  *Blonder-Tongue Laboratories v. Univ. of Ill. Found*., 402 U.S. 313, 323-24

10  (1971);  *Davis Wright & Jones v. National Union Fire Ins. Co.*, 709 F.Supp. 196 (W.D.Wa.1989), *aff'd*,

11  897 F.2d 1021 (9th Cir.1990).

12      Plaintiff's claim that the USDOA improperly ended his employment was determined against him by

13  the MSPB, and the decision of the MSPB was affirmed by the Federal Circuit.  *See Heckman v.*

14  *Department of Agriculture*, 93 M.S.P.R. 302 (2002 WL 31114683), *aff'd* 2003 WL 21920167 (Fed.Cir.

15  2003). The Federal Circuit in that case determined that plaintiff was terminated by the USDOA because he

16  failed to perform at an acceptable level during his probationary period.  Plaintiff's claims that he was

17  improperly terminated by the USDOA involved claims brought by him that were litigated in a prior suit, a

18  final judgment was reached on the merits.  These claims are barred by res judicata.

19      Moreover, the Civil Service Reform Act (CSRA) precludes any other claims plaintiff has relating to

20  the personnel practices and employment decisions of the USDOA.  The CSRA provides plaintiff's only

21  remedy when a federal employee challenges his supervisor's prohibited personnel practices. *Orsay v. U.S.*

22  *Dep't. Of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002).  The CSRA allows employees to challenge the

23  actions of their employers by appealing to the MSPB.  5 U.S.C. § 7701(a).  An employee aggrieved by the

24  MSPB's decision can appeal the decision to the Federal Circuit.  See 5 U.S.C. § 7703.  In this case,

25  plaintiff did appeal his termination to the MSPB, and then appealed the MSPB's adverse decision to the

26  Federal Circuit.  Accordingly, plaintiff's claims related to his termination by the USDOA, in addition to

27  being barred by res judicata, are preempted by the CSRA.  These claims should be dismissed.

28      Further, in *Heckman v. Department of Agriculture,* Western District of Washington, C00-

1   5232FDB, the U.S. District Court dismissed on summary judgment plaintiff's claims, pursuant to the

2   Privacy Act, to amend personnel records, which plaintiff had asserted contained a series of falsehoods and

3   misrepresentations of fact used to justify his dismissal for unsatisfactory performance.  Plaintiff contends

4   that the court in C00-5232FDB erred in dismissing his Privacy Act claims, because that dismissal was

5   based upon the Federal Circuit's decision in *Heckman v. Department of Agriculture*, 2003 WL 21920167

6   (Fed.Cir. 2003), which was a review of the MSPB decision.  Plaintiff maintains that the MSPB had no

7   jurisdiction to consider his Privacy Act claims, and therefore, the decision in C00-5232FDB dismissing his

8   privacy claims on summary judgment was in error.  The proper avenue to address the district court's

9   decision in C00-5232FDB was on appeal to the Ninth Circuit U.S. Court of Appeals, not to file another

10  case in District Court, raising issues that have been previously decided against him.  The court notes that

11  plaintiff did file an appeal in C00-5232FDB, but voluntarily dismissed the appeal.  See C00-5232FDB, Dkt.

12  69.  Accordingly, plaintiff's claims that the USDOA created fraudulent employment records are barred by

13  res judicata.

14          Accordingly, plaintiff's claims related to his dismissal by the USDOA, including the USDOA

15  records related to his employment, were litigated in prior actions, a final judgment was reached on the

16  merits of those claims, and the claims involve the same parties or their privies; these claims are barred by

17  *res judicata*.

18          **Privacy Act.**  Plaintiff contends that the USDOA violated the Privacy Act in respect to an issue

19  that was not previously raised and/or determined in a prior action.  Plaintiff contends that USDOA officials

20  improperly released information to the State of Washington that was protected by the Privacy Act.

21  Specifically, plaintiff contends that USDOA program manager Deanna Stouder gave derogatory

22  information to Washington Department of Ecology employee Dale Norton, and that he had not authorized

23  the USDOA to release this information.

24          Pursuant to 5 U.S.C. § 552a(b), with certain exceptions, "[n]o agency shall disclose any record

25  which is contained in a system of records by any means of communication to any person, or to another

26  agency, except pursuant to a written request by, or with the prior written consent of, the individual to

27  whom the record pertains."

28          The proper forum for making allegations of Privacy Act and Freedom of Information Act (FOIA)

1   violations is the federal district court after the exhaustion of administrative remedies. 5 U.S.C. § 552a(g)(1)

2   and *Cargill v. Marsh*, 902 F.2d 1006, 1007-08 (D.C.Cir.1990); 5 U.S.C. § 552a(4)(B) and *Nagel v.*

3   *United States Department of Health, Education, and Welfare*, 725 F.2d 1438, 1440 n. 1 (D.C.Cir.1984).

4     The Privacy Act does not necessarily cover disclosure of information merely because it may be

5   contained in the records.  Such a broad application of the Privacy Act would impose an "intolerable

6   burden, and would expand the Privacy Act beyond the limits of its purpose, which is to preclude a system

7   of records from serving as the source of personal information about a person that is then disclosed without

8   the person's prior consent.  *Olberding v. United States Dep't of Defense*, 709 F.2d 621, 622 (8th

9   Cir.1983).  If a party discloses information obtained independently of any records, such a disclosure does

10  not violate the Privacy Act, even if identical information is contained in the records.  *Id.*  Based on this

11  rationale, courts have developed a general rule that the Privacy Act prohibits only "nonconsensual

12  disclosure of any information that has been retrieved from a protected record."  *Bartel v. FAA*, 725 F.2d

13  1403, 1408 (D.C.Cir.1984).  *See also Kline v. HHS*, 927 F.2d 522, 524 (10th Cir.1991); *Thomas v. United*

14  *States Dep't of Energy*, 719 F.2d 342, 345 (10th Cir.1983);  *Olberding*, 709 F.2d at 622;  *Jackson v.*

15  *Veterans Admin.*, 503 F.Supp. 653, 656 (N.D.Ill.1980).

16    In this case, plaintiff contends that the information provided on the telephone by a program

17  manager with USDOA to a prospective employer with the State of Washington violated the Privacy Act.

18  He alleges that the information Ms. Stouder disclosed came from his personnel records.  There is no basis

19  in the record to support plaintiff's claim that Ms. Stouder violated the Privacy Act.  Ms. Stouder

20  responded to Mr. Norton's request over the telephone.  Dkt. 39, Exh. E, at 2 and 7; and Exh. F.  Ms.

21  Stouder's information was based upon her personal knowledge of plaintiff and her personal experiences as

22  one of his supervisors.  Dkt. 39, Exh. F, at 2.  This verbal information, from an individual who worked

23  with plaintiff, was disclosed independently of any records, and therefore does not state a claim under the

24  Privacy Act.  This claim should be dismissed.

25    For the foregoing reasons, the USDOA's motion for summary judgment should be granted, and the

26  claims against the USDOA should be dismissed.

27

28

**2.  The State of Washington's Motion to Dismiss and for Summary Judgment**

In *Heckman v. Department of State of Washington Department of Ecology, Department of Fish and Wildlife*, 2003 WL 22701479 (Wn.App. Div. 2), *review denied*, 151 Wash.2d 1036 (2004), the Washington Court of Appeals summarized the facts surrounding plaintiff's applications for state employment, as follows:

> Dr. Heckman served heroically as a United States Air Force pilot in the Vietnam war.  After the war, he earned a Master of Science degree from the Graduate School of Arts and Sciences at St. John's University in New York.  Later the University of Hamburg (Germany) awarded him a Doktor der Naturwissenschaften (biology) degree.
>
> During the late 1970s and through the late 1980s, Dr. Heckman worked on scientific projects around the world.  In the 1990s, he performed research work on Brazilian ecological projects.  Dr. Heckman has written and published multiple books and numerous scientific articles, predominately on ecology and biology.
>
> Between 1999 and 2000, Dr. Heckman applied for various employment vacancies in the Department of Ecology (DOE) and the Department of Fish and Wildlife (DFW).  Neither DOE nor DFW hired him.

*Id.* at *1.

Plaintiff filed suit in state court against DOE and DFW, alleging age and veteran status discrimination and retaliation.  *Id*. at *2.  The trial court dismissed the claims on summary judgment. Plaintiff appealed, and the Washington Court of Appeals affirmed.  *Id.* The Washington Supreme Court denied review.

The complaint in this case alleges that (1) the State of Washington has repeatedly denied plaintiff employment, even though he had higher examination scores than other applicants, or at least had scores equal to those of other applicants; (2) he had a right under both state and federal law to a veteran's preference; (3) persons hired for the positions for which he applied were either non-veterans or without legal preference rights; (4) persons hired for the positions for which he applied were younger than 40 or were already agency employees who had been initially hired at an age under 40; (5) when he filed suit in state court, he was denied a trial by jury because summary judgment was granted in favor of the State of Washington; (6) the State of Washington rigged selections for positions in a fraudulent attempt to gain control over federal money; (7) the State of Washington gave undue advantage to current agency employees; (8) the search committee for one of the positions for which he applied contacted plaintiff's former program manager at the United States Forest Service and illegally obtained false information from

his personnel records sufficient to keep him from being selected for the position, thereby violating the Privacy Act, 5 U.S.C. § 552a(i) and Washington's anti-blacklisting law, RCW 49.44.010;  and (9)  the Washington courts conspired with the agency to prevent plaintiff from presenting his case to a jury.

On May 27, 2005, the State of Washington filed a Motion to Dismiss and for Summary judgment, claiming that (1) summary judgment dismissal by a state court does not violate the Seventh Amendment; (2) plaintiff's claims are barred by the Eleventh Amendment; (3) a state cannot be sued under 42 U.S.C. § 1983, and, to the extent plaintiff might seek to name a state court judge as an individual defendant, the claims would be barred by absolute immunity; (4) plaintiff's claims are barred by the doctrine of collateral estoppel and full faith and credit; (5) plaintiff fails to state a claim under RICO.   Dkt. 28.

On June 8, 2005, plaintiff filed a response, contending that (1) he was denied the right to a trial by jury, in violation of the Seventh Amendment; (2) the Department of Ecology retaliated against him for filing a complaint with the Equal Opportunity Employment Commission; (3) the State of Washington has blacklisted him for all employment, in violation of his Fifth Amendment right to Due Process; (4) he was denied Equal Protection, in violation of the Fourteenth Amendment; and (5) he was denied his statutory veterans' preference, and was denied "mandatory affirmative action rights required of the State as a Federal contractor pursuant to Chapter 38 of the United States Code; and 41 CFR 60-250."  Dkt. 29, at 2-3.  Plaintiff maintains that the issue of whether the State of Washington should lose its right to receive funds under federal contract has not been previously litigated.  Id. at 7-8.

On July 17, 2005, plaintiff filed an additional response, contending that he was denied a trial by jury in his state case, and that there is a criminal conspiracy to misuse large federal grants. Dkt. 37, at 17-23.

**Seventh Amendment.**  Plaintiff contends that the Washington courts violated his constitutional right to trial by jury when the court dismissed his claims on summary judgment.

When a court finds that there are no triable issues for a jury and dismisses a case on summary judgment, the plaintiff's right to a jury trial is not violated.  *Shannon v. Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001)(citing *Fed. & Deposit Co. v. United States*, 187 U.S. 315, 319-20 (1902); *Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199, 1203 n. 6 (9th Cir. 1974).  Plaintiff has not stated a claim that his right to a trial by jury was violated when the Washington courts dismissed his state court action on

1    summary judgment.  The State of Washington's motion to dismiss and motion for summary judgment
2    should be granted as to this claim, and the claim should be dismissed.

3        *Eleventh Amendment.*  To the extent that plaintiff alleges that the judges in his state case violated
4    his constitutional rights by dismissing his state court suits on summary judgment, the State of Washington
5    contends that the claims are barred by the Eleventh Amendment.  The court will discuss this issue as an
6    alternative basis for dismissing plaintiff's claim that his constitutional right to trial by jury was denied when
7    his state court case was dismissed on summary judgment.

8        The Eleventh Amendment to the United States Constitution bars a person from suing a state in
9    federal court without the state's consent.  *See Seminole Tribe of Florida v. Florida* 116 S.Ct. 1114, 1131
10   (1996); *Natural Resources Defense Council v. California Dep't of Transportation*, 96 F.3d 420, 421  (9th
11   Cir. 1996).  Eleventh Amendment immunity extends to state agencies.  *Pennhurst State Sch. & Hosp. v.
12   Holdeman*, 465 U.S. 89, 101-102 (1984).  Congress did not abrogate Eleventh Amendment immunity by
13   enacting 42 U.S.C. § 1983.  *Hale v. State of Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993).  A state's
14   consent to suit in its own courts does not constitute a waiver of Eleventh Amendment immunity in federal
15   courts.  *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1998).  The State of Washington has not waived
16   sovereign immunity for damages claims under 42 U.S.C. § 1983.  *See Rains v. State*, 100 Wn.2d 660, 667-
17   68 (1983).  Plaintiff's claims against the State of Washington for violation of his constitutional rights are
18   barred by the Eleventh Amendment.  The State of Washington's motion to dismiss and for summary
19   judgment should be granted as to plaintiff's claims against the State of Washington based on 42 U.S.C. §
20   1983.

21       Further, any amendment to the complaint to name the judges who made the decisions in plaintiff's
22   state cases would be futile.  Judges are absolutely immune from damages for judicial acts taken within the
23   jurisdiction of their courts.  *Asheman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986); *Mullis v. United States
24   Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987).  Even grave procedural errors or acts in excess of
25   judicial authority do not deprive a judge of this immunity.  *Stump v. Sparkman*, 435 U.S. 349, 355-57
26   (1973).  As long as the judge's ultimate acts are judicial actions taken within the court's subject matter
27   jurisdiction, immunity applies.  *Asheman*, 793 F.2d at 1078.  Further, judges acting in their official

28

1   capacities are not persons subject to suit for money damages under 42 U.S.C. § 1983.  *See Will v. Mich.*

2   *Dep't of State Police*, 491 U.S. 58, 71 (1989).

3          Plaintiff's claim that he was denied his constitutional right to a jury trial should be dismissed as

4   barred by the Eleventh Amendment.  Amendment of the case to name individual judges would be futile.

5   The State of Washington's motion to dismiss and for summary judgment should be granted as to this issue.

6          ***Collateral Estoppel and Full Faith and Credit.***  Plaintiff contends that the State of Washington

7   retaliated against him, blacklisted him, and denied him veterans' reference when it refused to hire him for

8   positions for which he was qualified.  The State of Washington contends these claims are barred by the

9   doctrine of collateral estoppel, which the federal court should apply to the decisions of the Washington

10  courts that have adjudicated these matters.

11         Washington state courts apply the doctrine of collateral estoppel.  *Rains*, 100 Wn.2d at 674.  A

12  federal court must give a state court judgment the same preclusive effect as would be given that judgment

13  under the law of the state in which the judgment was rendered.  *Migra v. Warren City School Dist. Of*

14  *Educ.*, 465 U.S. 75 (1984)(relying upon 28 U.S.C. § 1738 and U.S. Const. Art. IV, § 1).

15         Collateral estoppel is appropriate when the following elements are met:  (1) there was a full and fair

16  opportunity to litigate the issue in the previous action;  (2) the issue was actually litigated in that action;

17  (3) the issue was lost as a result of a final judgment in that action; and  (4) the person against whom

18  collateral estoppel is asserted in the present action was a party or in privity with a party in the previous

19  action. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir.1992); *see generally  Parklane Hosiery Co. v. Shore*,

20  439 U.S. 322, 329, (1979); Charles Alan Wright, Law of Federal Courts 724-26 (5th ed.1994).

21         Plaintiff unsuccessfully challenged the State's failure to hire him in relation to his age and veteran

22  status, and in alleged connection to blacklisting or retaliation.  He had a full and fair opportunity to litigate

23  those claims.  The issues were actually litigated in the state court action.  Plaintiff lost those claims as a

24  result of a final judgment in the state court action.  Therefore, these claims are barred under the doctrine of

25  collateral estoppel, and this court should give full faith and credit to the state court's ruling.  28 U.S.C. §

26  1738.  The State of Washington's motion to dismiss and for summary judgment should be granted as to

27

28

1   plaintiff's claims that the State's failure to hire him in relation to his age, veteran status, and in alleged

2   connection to blacklisting/retaliation should be granted, and these claims should be dismissed.

3       **RICO.**  Plaintiff has alleged a claim against the State of Washington for violation of RICO.  In

4   order to state a RICO claim, plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4)

5   of racketeering acts (predicate acts)  (5) constituting the proximate cause of injury to plaintiff's property.

6   18 U.S.C. § 1862(c) and 18 U.S.C. § 1864(c);  *Sedema, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

7   To properly plead the existence of a RICO enterprise, a plaintiff must plead the existence of a formal or

8   informal ongoing organization that functions as a unit.  *United States v. Turkette*, 452 U.S. 576, 580

9   (1981).  This organization must be plead with sufficient specificity so that it can be seen as having a

10  structure and that structure must be separate from the pattern of alleged racketeering.  *Chang v. Chen*, 80

11  F.3d 1293, 1298 (1996).  In addition, in order to constitute a predicate act and racketeering activity

12  flowing through an enterprise, the conspiracy must involve an enumerated offense under 28 U.S.C. § 1961.

13  *Id.*  Plaintiff has not met these requirements.

14      To the extent that plaintiff asserts a RICO claim based on the actions of state courts or

15  governmental agencies, he has failed to allege an enterprise that meets the requisites of a RICO claim.

16  Plaintiff has not pled a structure that is separate from the pattern of alleged racketeering.   Further,

17  government entities are not capable of forming the criminal intent necessary to support the predicate RICO

18  offenses as alleged by plaintiff.  *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d

19  397, 404 (9th Cir.1991), *cert. denied*, 502 U.S. 1094 (1992).  In addition, governmental entities cannot be

20  held liable under a theory of respondeat superior for RICO claims.  *Id.*

21      The State of Washington's motion to dismiss and for summary judgment should be granted as to

22  plaintiff's RICO claims, and these claims should be dismissed.

23      **Federal Contract**.  Plaintiff argues that the State of Washington denied him mandatory affirmative

24  action rights required of the State as a Federal contractor pursuant to Chapter 38 of the United States

25  Code; and 41 CFR § 60-250.  Plaintiff maintains the State of Washington should lose its right to receive

26  funds under federal contract.

27      Under 41 CFR § 60-250, the Office of Federal Contract Compliance Programs can initiate

28  administrative proceedings to enforce contractors to comply with federal requirements for affirmative

1   action and nondiscrimination obligations. See 41 CFR § 60-250.65(a)(1).  Judicial relief may be sought by

2   the Deputy Assistant Secretary for Federal Contract Compliance of the United States Department of

3   Labor.  41 CFR § 60-250.65(a)(2) (Deputy Assistant Secretary for Federal Contract Compliance of the

4   United States Department of Labor "may, within the limitations of applicable law, seek appropriate judicial

5   action to enforce the contractual provisions set forth in § 60-250.5, including appropriate injunctive

6   relief.").  Plaintiff has not shown that he has a private cause of action under the statutes and regulations

7   cited to request this court to enjoin the State of Washington from receiving federal funds.  This claim

8   should be dismissed.

9          Based on the foregoing discussion, the State of Washington's motion to dismiss and for summary

10  judgment should be granted, and the case should be dismissed.

11         Therefore, it is hereby

12         **ORDERED** that the United States' Motion to Dismiss, which has been converted to a motion for

13  summary judgment (Dkt. 27) is **GRANTED**, and all claims against the United States Department of

14  Agriculture are **DISMISSED WITH PREJUDICE**.   The State of Washington's Motion to Dismiss and

15  for Summary Judgment (Dkt. 28) is **GRANTED**, and all claims against the State of Washington are

16  **DISMISSED WITH PREJUDICE**.

17         The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

18  party appearing *pro se* at said party's last known address.

19         DATED this 25th day of July, 2005.

20

21                                                     Robert J. Bryan
22                                                     United States District Judge

23

24

25

26

27

28